**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X
JUSTIN ONNE,

                            Plaintiff,

     -against-

MUSEUM OF CHINESE IN AMERICA and NANCY
YAO MAASBACH,

                           Defendants.
-------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

__ CIV ____

       Plaintiff Justin Onne, by his attorney, the Law Office of Deborah H. Karpatkin, as and

for his Complaint against Defendants, alleges as follows:

<b>NATURE OF THE ACTION</b>

       1.     Justin Onne was hired by the Museum of Chinese in America (MOCA) as a

multimedia producer.  His job was to take videos and photos of MOCA events and donors, as

well as MOCA's collections and archives, as directed by MOCA management, and prepare them

for presentation in various formats and for various purposes. Mr. Onne frequently worked more

than 40 hours a week, including nights and weekends, with no overtime pay.

       2.     MOCA frequently praised Mr. Onne's work, and frequently acknowledged his

very long working hours and dedication. But despite Mr. Onne's recognized hard work and

excellence, MOCA fired Mr. Onne, soon after he reported to MOCA management that he had

witnessed a co-worker being sexually harassed by another MOCA employee.

       3.     MOCA simultaneously fired not just Mr. Onne but also two others who were

connected to the sexual harassment: the co-worker who was the victim of the sexual harassment,

and another co-worker who also witnessed and reported the sexual harassment, all for pretextual

reasons.

4.      MOCA never paid Mr. Onne for his overtime, or even for his last days of work.

5.      Onne brings this action for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq (Title VII), the New York State Human Rights Law, N.Y. Exec. Law §290 et seq. (the NYSHRL), and the New York City Human Rights Law, Administrative Code §8-101 et. seq. (the "NYCHRL").   Plaintiff also brings this action for unpaid wages and denial of overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and for failure to pay minimum wage under the New York Labor Law and applicable New York State wage regulations.

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 (federal question), and 29 U.S.C. §216(b) (FLSA). This court has supplemental jurisdiction of plaintiff's NYSHRL, NYCHRL and NYLL claims pursuant to 28 U.S.C. §1367(a), because they form part of the same case or controversy.

7.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2) because the parties reside in and are located in the district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PROCEDURAL REQUIREMENTS

8.      On or about March 25, 2020 plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against MOCA, alleging unlawful retaliation in violation of Title VII.

9.      On February 28, 2021, the EEOC issued a Final Determination concluding that "there is reasonable cause to believe that [MOCA] terminated Charging Party in retaliation for having engaged in a protected activity in violation of Title VII."

10.     On May 16, 2021, the EEOC issued a Notice of Right to Sue.  This action is filed within 90 days of receipt of that Notice.

11.     Following the commencement of this action, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## JURY DEMAND

12.     Plaintiff demands a trial by jury.

## THE PARTIES

13.     Plaintiff Justin Onne lives in New York County, New York.  He worked for MOCA as a multimedia producer from May 1, 2019 until his unlawful and involuntary termination in December 2019.

14.     Defendant Museum of Chinese in America (MOCA) is a nonprofit organization, with its principal place of business at 215 Centre Street, New York, NY 10013.  MOCA employed at least fifteen employees during Onne's employment.

15.     Defendant Nancy Yao Maasbach (Maasbach) was and continues to be President of MOCA.

16.     MOCA is an employer within the meaning of Title VII, the NYCHRL, the NYSHRL, the FLSA, and NYS Labor Law.

## STATEMENT OF FACTS

17.     Mr. Onne worked for MOCA as a multimedia producer, reporting to MOCA's Director of External Affairs, Edward Cheng.   MOCA paid Mr. Onne a base salary of $40,000/year.

18.     Mr. Onne's duties included taking photos and videos, and editing photos and videos about MOCA's programs, patrons and archives, for MOCA's exhibits, collections, events, website and social media.   Mr. Onne also wrote and edited copy for MOCA's external communications.   Mr. Onne also functioned as Mr. Cheng's assistant on various administrative tasks.

19.     Mr. Onne's work was undertaken at the direction of supervisor, Mr. Cheng, who gave Mr. Onne direction as to the content and the format of the media Mr. Onne produced. Defendant Maasbach also gave Mr. Onne direction on the content the work Mr. Onne was assigned.

20.     MOCA was very satisfied with Mr. Onne's work.   He worked very long hours, including nights and weekends, with no overtime pay.

**Sexual Harassment and Protected Activity.**

21.     During the course of his employment, Mr. Onne witnessed a co-worker, Hailey Savage, being sexually harassed by a senior MOCA staff person, Erwin Geronimo.

22.     On September 9, 2019, MOCA staff (including Mr. Onne) had anti-harassment training.    From the training, Mr. Onne learned the importance of reporting any sexual harassment he witnessed.

23.     On September 10, 2019, Mr. Onne reached out to Josh Davis, MOCA's Chief Operating Officer and Head of Human Resources, about a "Harassment Complaint," stating "In

light of yesterday's training, I feel that I should come to you about an incident I witnessed involving two co-workers at the museum outside of work."   Mr. Onne further stated, "I witnessed what I think constitutes harassment exchanged via text messaging between Hailey and Erwin."

24.     Mr. Onne encouraged Ms. Savage to report Mr. Geronimo's sexual harassment of her to Human Resources.  In addition, Mr. Onne reported to Mr. Davis that Ms. Savage had told him that she felt sexually harassed by Mr. Geronimo. Mr. Onne told Mr. Davis that he had personally seen the harassing text message.

25.     Another MOCA co-worker, Grayson Chin, also saw Mr. Geronimo sexually harassing Ms. Savage. Ms. Savage told Mr. Chin that Mr. Geronimo sent her sexually suggestive texts, and had been making sexual advances towards her for several months, even after she repeatedly told him she was not interested.  Ms. Savage asked for Mr. Chin's support in reporting Mr. Geronimo's sexual advances.  Mr. Chin encouraged Ms. Savage to report Mr. Geronimo's sexual harassment.

26.     On September 24, 2019, Mr. Onne received an email from an attorney (Grace Wen) who explained that she and her partner "were retained by MOCA to look into an employee concern that has been raised."

27.     Ms. Wen asked to meet with Mr. Onne the next day (9/25/19).

28.     Mr. Onne was ready to go ahead with the meeting, but the meeting was cancelled, and MOCA's investigators declined to ask Mr. Onne for the information he had about Mr. Geronimo's sexual harassment of Ms. Savage.

29.     Defendant Maasbach knew about Mr. Onne and Mr. Chin's planned meetings with MOCA's investigators.  She was cc'd on Ms. Wen's email to Mr. Onne, and directly

informed Mr. Onne (by text) about the meeting.  Similarly, defendant Maasbach spoke to Mr. Chin before he met with the MOCA investigators, and told him to "keep the museum's interests in mind."  Mr. Chin heard this as a warning.

30.     On information and belief, MOCA took no disciplinary action against Mr. Geronimo.  In fact, at the end of November 2019, just before MOCA terminated Mr. Onne, Ms. Savage, and Mr. Chin, MOCA rewarded Mr. Geronimo with additional responsibilities.

31.     On information and belief, Mr. Geronimo is still employed by MOCA, as Facilities Manager.

**MOCA Pretextually Terminates Mr. Onne, Ms. Savage, an Mr. Chin.**

32.     Mr. Onne's workload in October and November 2019 was extremely heavy, leading up to MOCA's Gala on November 13, 2019.  He worked extremely long hours to get the videos and photographs ready for the Gala.  In the week before the Gala (week of 11/3/19) he worked 92 hours – 52 overtime hours.  In the week of the Gala itself (week of 11/10/19), he worked at least 85 hours – at least 40 overtime hours.  But MOCA paid Mr. Onne his base salary, with no overtime.

**MOCA Fires Mr. Onne Right After the Gala.**

33.     After the Gala, Mr. Onne took a few days off, with the consent of his supervisor, before the Thanksgiving holiday.

34.     On December 5, 2019, while he was taking time off, Mr. Onne received a text message from defendant Maasbach, stating "Justin, I know you are on comp but I need to speak with you today in person at 5:30.  Do you mind coming to the office?"  Mr. Onne complied.  The meeting was to terminate Mr. Onne.  On the same day, MOCA also terminated Ms. Savage and Mr. Chin.

35.     MOCA claimed that Mr. Onne's termination was for financial reasons, but this reason is pretextual.

36.     At the time MOCA fired Mr. Onne, MOCA had successfully raised substantial funds to support its program.   Defendant Maasbach stated that MOCA's June 2019 "Celebration of Community Heroes" event achieved MOCA's fundraising goal.  Via email on November 18, 2019, defendant Maasbach described FY2019 as "heading to a strong finish line!" and celebrated a "surprising jump in grant allocation" from an important funder.   She reported that the November Gala "broke $1MM."

37.     MOCA cannot claim that it terminated Mr. Onne for performance reasons. Defendant Maasbach told Mr. Onne that he had "done a great job" and that the termination had "nothing to do with [his] performance."   Defendant Maasbach offered to serve as a personal reference, described Mr. Onne as "a huge team player," and "amazing at what [he] [does]".  She called him "an incredible, gifted Multimedia Producer."

38.     Mr. Onne's supervisor, Mr. Cheng, wrote to Mr. Onne: "Knowing you and working with you has been the best thing about 2019."

**Pattern and Practice of Retaliation.**

39.     Defendants' termination of Mr. Onne, Ms. Savage and Mr. Chin are part of a pattern and practice of overlooking sexual harassment and retaliating against those who complain about sexual harassment.

40.     In addition to the retaliatory terminations of Mr. Onne, Ms. Savage and Mr. Chin, on information and belief Defendants also terminated Joyce Huang in 2019 in retaliation for the opposing the sexual harassment directed to a young female MOCA intern and a MOCA Grant Writer.

41.    Ms. Huang is pursuing claims against MOCA in this district (*Huang v. Museum of Chinese In America et al.*, 21-cv-02577), and Mr. Chin is pursuing claims against MOCA in New York County (*Chin v. Museum of Chinese in America*, Index No. 151632/2021).

**MOCA Fails to Pay Mr. Onne Overtime**

42.    On many occasions during the course of his employment with MOCA, Mr. Onne was called upon to work more than 40 hours a week.

43.    MOCA paid Mr. Onne for only 40 hours a week even when he worked more than 40 hours a week.

44.    MOCA failed to pay Mr. Onne at all for the hours he worked in excess of 40 hours a week and did not pay him overtime for the hours he worked in excess of 40 hours/week.

45.    Mr. Onne's lengthy work hours coincided with the media production requirements of MOCA events, and other time-intensive deadline driven assignments.

46.    Based on Mr. Onne's own records of the hours he worked while employed by MOCA, MOCA failed to pay Mr. Onne for the hours he worked more than 40 hours/week as follows:

| WEEK | HOURS WORKED | OVERTIME HOURS |
|---|---|---|
| 5/5/19 | 45 | 5 |
| 5/12/19 | 56.5 | 16.5 |
| 5/19/19 | 49 | 9 |
| 6/2/19 | 81.5 | 41.5 |
| 6/9/19 | 71 | 31 |
| 7/7/19 | 52.5 | 12.5 |
| 7/14/19 | 42 | 2 |

| 7/21/19 | 51 | 11 |
| 7/28/19 | 56 | 16 |
| 8/4/19 | 61 | 21 |
| 8/11/19 | 52 | 12 |
| 8/18/19 | 42 | 2 |
| 8/25/19 | 45 | 5 |
| 9/8/19 | 53.5 | 13.5 |
| 9/15/19 | 49.5 | 9.5 |
| 9/22/19 | 56.5 | 16.5 |
| 9/29/19 | 42 | 2 |
| 10/7/19 | 45 | 5 |
| 10/13/19 | 45.5 | 5.5 |
| 10/20/19 | 55.5 | 15.5 |
| 10/27/19 | 52 | 12 |
| 11/3/19 | 92 | 52 |
| 11/10/19 | 80.5 | 40.5 |
| 11/17/19 | 51 | 11 |
| **Total Unpaid Overtime hours** | | **367.5 hours** |

47.    Based on Mr. Onne's records, MOCA failed to pay him for 367.5 overtime hours.

48.    Mr. Onne's rate of pay was $40,000/year, or $19.23/hour.  His OT rate (at time and a half) was $28.85/hour.

49.     Defendants failed to timely pay Mr. Onne overtime owed to him in the amount of $10,559.

50.     Defendants also failed to timely pay Mr. Onne his wages in full for the four days (32 hours) of his last week of work (December 1-December 5, 2019), in the amount of $615.36.

51.     Defendants also failed to pay Mr. Onne his accrued unused vacation.

52.     In addition, for some of the weeks listed above, Defendants failed to pay Mr. Onne the New York State minimum wage of $15/hour for all the hours that he worked.

53.     These records are based on Mr. Onne's own records of the hours he worked while employed by MOCA.

54.     MOCA's illegal acts were willful and intentional and have caused Mr. Onne damages.

**FIRST CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3(a)**
**(against MOCA)**

55.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

56.     Plaintiff engaged in protected activity by protesting and opposing the sexual harassment of a coworker, Hailey Savage.

57.     In response, Defendant MOCA terminated Plaintiff's employment, as soon as he had completed some essential work for MOCA – the photos and videos for the MOCA November 2019 Gala.

58.     MOCA at the same time also terminated Ms. Savage and Grayson Chin, another co-worker who protested and opposed the sexual harassment of Ms. Savage.

59.     MOCA had no legitimate non-retaliatory reason for terminating Plaintiff, Ms. Savage or Mr. Chin.

60.     MOCA employee Joyce Huang also protested sexual harassment at MOCA.

61.     On information and belief, MOCA had no legitimate non-retaliatory reason for terminating Ms. Huang.

62.     By the actions described above, defendant MOCA retaliated against Plaintiff because of his protected activity of reporting and opposing discriminatory practices and his readiness to participate in an investigation of said discriminatory practices, in violation of Title VII.

63.     As a direct and proximate result of defendant MOCA's unlawful retaliatory actions, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which he is entitled to an award of damages.

64.     Defendant's unlawful and retaliatory actions constitute willful, wanton and malicious violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF**
**THE NEW YORK CITY HUMAN RIGHTS LAW ("NYC HRL")**
**N.Y.C. Admin. Code §8-107(7).**
*(Against All Defendants)*

65.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff was at all relevant times Defendants' employee as that term is defined by the NYC HRL.

67.     Defendants were at all relevant times Plaintiff's employer as that term is defined by the NYC HRL.

68.     Defendant Maasbach aided and abetted the unlawful acts and practices described herein.

69.     By the acts and practices described above, Defendants intentionally retaliated against Plaintiff because he engaged in the protected activity of reporting and protesting the sexual harassment of a co-worker, and because of his readiness to participate in an investigation of said harassment, in violation of the NYC HRL.

70.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights under the NYC HRL.

**THIRD CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF**
**THE NEW YORK STATE HUMAN RIGHTS LAW ("NYS HRL")**
**NY Exec. Law §§291(1)(e) and 296(7)**
***(Against All Defendants)***

71.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72.     Plaintiff was at all relevant times Defendants' employee as that term is defined by the NYS HRL.

73.     Defendants were at all relevant times Plaintiff's employer as that term is defined by the NYS HRL.

74.     Defendant Maasbach aided and abetted the unlawful acts and practices described herein.

75.     By the acts and practices described above, Defendants intentionally retaliated against Plaintiff because he engaged in the protected activity of reporting and protesting the sexual harassment of a co-worker, and because of his readiness to participate in an investigation of said harassment, in violation of the NYS HRL.

76.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights under the NYS HRL.

**FOURTH CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME AND UNPAID WAGES**
**("FLSA")**
**29 U.S.C. §201 *et seq.***
***(Against All Defendants)***

77.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff was an "employee" of Defendant MOCA, and Defendant MOCA was his "employer" as defined in 29 U.S.C. §203(d) and 29 U.S.C. 203(e)(1).

79.     Plaintiff's primary duties were making videos and taking photographs as directed, editing the videos and photographs to conform to the directions he was given, and posting the videos and photographs as directed, while ensuring that the finished products met MOCA's requirements for content and format.

80.     Plaintiff's work was supervised by defendant's Director of External Affairs, Edward Cheng.  Mr. Cheng was responsible for "managing all MOCA videos," which were produced by Plaintiff.

81.     Plaintiff's work was closely controlled, down to small details, by MOCA.

82.     MOCA determined the subject, content, format, and style of Plaintiff's work, and instructed Plaintiff on how to carry out MOCA's vision for the media produced by Plaintiff.

83.     Plaintiff's work did not require the consistent exercise of discretion and judgment in its performance.

84.     Plaintiff's work did not require advanced knowledge.

85.     Plaintiff's work was not in a field of Science or Learning.

86.     Plaintiff's work did not require specialized academic training.

87.     Plaintiff's work did not primarily depend upon invention, imagination, originality or talent.

88.     Plaintiff's work did not require him to contribute a unique interpretation or analysis to the pictures and videos he produced.  Rather, Plaintiff, collected, organized and recorded events, interviews, and the like as directed and determined by MOCA.

89.     Plaintiff's primary duty depended in large part on his ability to follow directions.

90.     Plaintiff primary duty did require him to exercise editorial or content control of the media he produced., or to engage in any analysis or interpretation of the content of the media he produced.

91.     MOCA constitutes an "enterprise" within the meaning of the FLSA, 29 U.S.C. §203(r). It is engaged in interstate commerce, has more than two employees, and has gross revenues in excess of $500,000.00/year.

92.     Defendant MOCA expected Mr. Onne to work more than 40 hours a week, and Mr. Onne regularly worked more than 40 hours a week throughout his employment.

93.     Defendant MOCA willfully, knowingly and intentionally did not compensate Mr. Onne for overtime at a rate of one- and one-half times his hourly rate of pay for all of the hours he worked in excess of 40 hours a week.

94.     Defendant MOCA knew of and/or showed reckless disregard for the practices by which Mr. Onne was not paid a rate of one- and one-half times his hourly rate of pay for all hours worked in excess of 40 hours in a week.

95.     Defendant MOCA's failure to pay Mr. Onne overtime was a willful violation of the FLSA, 29 U.S.C. §207.

96.     Defendant MOCA failed to pay Mr. Onne timely and in full for the last four days of his employment.

97.     Defendant MOCA's failure to pay Mr. Onne timely and in full for the last four days of his employment was a willful violation of the FLSA.

98.     Pursuant to the FLSA, Mr. Onne is entitled to recovery of full payment of unpaid wages for the hours he worked in excess of 40 hours a week at a rate of one- and one-half times his hourly rate of pay, for the four days he worked and was not paid, and FLSA liquidated damages pursuant to 29 U.S.C. §216(b), attorney's fees and costs, and disbursements of this action.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**New York Labor Law §160(3) and 198; New York Minimum Wage Act,**
**Labor Law §650 et seq.; 12 NYCRR 142-2.2**
***(Against All Defendants)***

99.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

100.    Plaintiff was an "employee" and Defendants were an "employer" as defined in New York Labor Law.

101.    Defendants' failure to pay Plaintiff overtime was a willful violation of New York Labor Law and applicable regulations.

102.    Pursuant to New York Labor Law, Plaintiff is entitled to recovery of full payment of unpaid wages for the hours he worked in excess of 40 hours a week at a rate of one- and one-half times his hourly rate of pay, an additional amount equal thereto in liquidated damages, prejudgment interest, attorneys' fees, and costs and disbursements of this action.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID BENEFITS AND WAGE SUPPLEMENTS**
**New York Labor Law §§ 190, 198-c**
***(Against All Defendants)***

103.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

104.    Pursuant to Defendants' written policies, Plaintiff was entitled to vacation pay.

105.    Such vacation pay is an employment benefit and wage supplement, as defined in New York Labor Law §198-c.

106.    Plaintiff accrued vacation pay but did not take the vacation pay to which he was entitled before MOCA terminated him.

107.    Pursuant to New York Labor Law, Plaintiff is entitled to recovery of full payment for his unpaid vacation pay, along with liquidated damages, interest, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PAY MINIMUM WAGE**
**New York Minimum Wage Act, Labor Law §650 et seq. and the 12 NYCRR 142 and 143**
***(Against All Defendants)***

108.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

109.    Defendants were required to pay Plaintiff the applicable New York State minimum wage ($15/hour) for all hours worked.

110.    Defendants failed to pay Plaintiff the applicable New York State minimum wage ($15/hour) for all of the hours Plaintiff worked.

111.    Defendants' failure to pay Plaintiff the minimum wage for all the hours he worked was knowing and intentional and willful.

16

112.    Pursuant to New York Labor Law, plaintiff is entitled to recovery of full payment for said unpaid minimum wage, along with liquidated damages, interest, attorneys' fees, and costs.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PAY EARNED WAGES**
**New York Labor Law §663 et seq.**

113.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

114.    Defendants failed to pay Plaintiff timely and in full for the last four days of his employment.

115.    Defendants' failure to pay Plaintiff timely and in full for the last four days of his employment was knowing, willful and intentional.

116.    Pursuant to New York Labor Law, Plaintiff is entitled to recovery of full payment for said unpaid earned wages, along with liquidated damages, interest, attorneys' fees, and costs.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief against the Defendants:

(a)    Declaring that the acts and practices complained of herein are, as specifically alleged, in violation of the Title VII, the NYS HRL, the NYC HRL, the FLSA, and the New York Labor Law;

(b)    Enjoining and permanently restraining these violations of Title VII, the NYS HRL, the NYC HRL, the FLSA, and the New York Labor Law;

(c)    Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

17

(d)      Directing Defendants to place Plaintiff in the position he would be in but for defendants' retaliatory and unlawful treatment of him, and to make him whole for all earnings and benefits he would have received but for Defendants' retaliatory and unlawful and treatment of him, including, but not limited to, wages and other lost benefits;

(e)      Directing Defendants to reinstate Plaintiff;

(f)      Directing Defendants to pay an additional amount to compensate Plaintiff for the emotional distress Defendant's unlawful conduct has caused and is causing him;

(g)      Directing Defendants to pay punitive damages to Plaintiff for their violation of the NYC HRL and the NYS HRL;

(h)      Directing Defendants to pay Plaintiff compensatory damages in an amount of one- and one-half times his hourly rate for all unpaid wages and all hours he worked overtime;

(i)      Directing Defendants to pay Plaintiff an amount equal thereto as liquidated damages as provided in 29 U.S.C. §216(b);

(j)      Directing Defendants to pay Plaintiff an amount equal thereto in liquidated damages as provided in New York Labor Law §198, and 12 NYCRR 142-2.2;

(k)      Directing Defendants to pay Plaintiff punitive damages for their willful violation of the NYC HRL and the NYS HRL;

(l)      Awarding Plaintiff prejudgment interest under the CPLR in accordance with applicable New York State law and such other pre- and post-judgment interest to which he may be entitled;

(m)      Awarding Plaintiff his reasonable attorneys' fees and costs; and

(n)     Awarding Plaintiff such other relief, legal or equitable, as may be warranted.

Dated:          New York, New York
                July 15, 2021

                                    Respectfully submitted

                                    LAW OFFICES OF
                                    DEBORAH H. KARPATKIN
                                    99 Park Avenue, PH/ 26th Fl.
                                    New York, New York 10016
                                    (646) 865-9930

                                    *Deborah H. Karpatkin*
                            By:
                                    Deborah H. Karpatkin

                            *Attorney for Plaintiff Justin Onne*